**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAMPAIGN LEGAL CENTER<br>1101 14th Street NW, Suite 400<br>Washington, DC 20005,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL ELECTION COMMISSION<br>1050 First Street NE<br>Washington, DC 20463,<br><br>Defendant. | Civil Action No. <u>21-cv-1376</u> |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

Plaintiff Campaign Legal Center ("CLC") brings this action against the Federal Election Commission ("FEC" or "Commission") for its failure to act on administrative complaint filed more than a year ago. On May 7, 2020, CLC filed an administrative complaint alleging that Big Tent Project Fund ("Big Tent Project"), a 501(c)(4) nonprofit, violated federal law by failing to register as a political committee and failing to report its contributions, expenditures, and debts.

Big Tent Project was formed on February 12, 2020, at the behest of donors concerned about the rising prospect of Bernie Sanders becoming the Democratic presidential nominee. It was formed the day after Sanders won the New Hampshire Democratic presidential primary, and one week after Sanders finished in a virtual tie in the Iowa caucuses. In just over one month after its formation, Big Tent Project spent more than $4.8 million on ads expressly advocating against Sanders and targeting voters in the states whose primary elections followed New Hampshire's.

1

But once Sanders' path to the presidential nomination became nearly impossible, Big Tent Project's election spending dropped precipitously.

Big Tent Project's election spending, along with public statements by and about the group, overwhelmingly indicates that its major purpose was influencing the 2020 presidential election, but it failed to register as a political committee and to publicly disclose its contributors, in violation of 52 U.S.C. §§ 30102-30104. Even if Big Tent Project were not a political committee, though, it still violated federal law, both by failing to disclose the identities of contributors who gave for political purposes and to fund its independent expenditures and by failing to report all independent expenditures in excess of $250, in violation of 52 U.S.C. § 30104(c).

Plaintiff's administrative complaint details these allegations against Big Tent Project, and has now been pending with the FEC for more than a year, but, on information and belief, the FEC has taken no action. Plaintiff therefore respectfully requests that this Court declare that the FEC's failure to act on Plaintiff's complaint is contrary to law, and order the FEC to conform within 30 days. If the FEC does not conform within 30 days, federal law authorizes Plaintiff to commence a civil action against Big Tent Project to enforce the requirements of 52 U.S.C. §§ 30102-30104.

\*       \*       \*

1.      This is an action under the Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30109(a)(8)(A), for unlawful agency delay.

2.      Big Tent Project's independent expenditures opposing Bernie Sanders' 2020 presidential campaign, the timing of the group's formation, public statements about the group's purpose and planned activities, and the group's severe drop in activity once it became clear that Sanders would not secure the presidential nomination collectively provide ample reason to believe that Big Tent Project met the definition of "political committee" under federal law and that the

2

organization failed to register, organize, and report as a federal political committee in accordance with 52 U.S.C. §§ 30102-30104.

3.      On May 7, 2020, Plaintiff CLC filed an administrative complaint with the FEC alleging that Big Tent Project violated 52 U.S.C. §§ 30102-30104 by failing to register as a political committee and file periodic disclosure reports in accordance with FECA.[1] Plaintiff further alleged that, even if Big Tent Project were not a political committee, it still violated FECA by failing to report the identities of contributors who gave for political purposes and for the purpose of funding its independent expenditures, and by failing to report all of its independent expenditures in excess of $250.[2]

4.      FECA provides administrative complainants with a right of action against the FEC if the Commission fails to act on their complaint within 120 days, at which point "the court may declare that . . . the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days, failing which the complainant may bring . . . a civil action to remedy the violation involved in the original complaint." 52 U.S.C. § 30109(a)(8)(C).

5.      Plaintiff's administrative complaint with the FEC has now been pending for more than 375 days, and, on information and belief, the Commission has taken no action on the complaint since receiving it. Plaintiff therefore requests that this Court declare that the FEC has acted contrary to law by failing to act on the administrative complaint and order the Commission to conform within 30 days by acting on Plaintiff's complaint.

---

[1]      *See* Ex. 1 (Admin. Compl.) ¶¶ 26-43.

[2]      *See id*. ¶¶ 44-52.

## JURISDICTION AND VENUE

6.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7.     Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A).

## THE PARTIES

8.     Plaintiff CLC is a nonpartisan, nonprofit 501(c)(3) organization whose mission is to protect and strengthen American democracy through litigation, public education, and other legal advocacy, including local, state, and federal efforts to ensure that the public has access to information regarding the financing of U.S. election campaigns.

9.     As part of these efforts, CLC conducts research, authors reports and articles, and regularly provides expert analysis to the media. CLC also litigates throughout the country regarding campaign finance matters; files FEC complaints requesting that enforcement actions be taken against individuals or organizations that violate the law; participates in rulemaking and advisory opinion proceedings before the FEC to ensure that the agency is properly interpreting and enforcing federal election laws; and engages in legislative advocacy for reform measures at the federal, state, and local level.

10.     CLC relies on the accurate and complete reporting of campaign finance information to carry out activities central to its mission, including producing reports and other materials to educate the public about campaign spending and the true sources and scope of candidates' financial support. These activities are obstructed when information that is subject to mandatory disclosure under FECA is not publicly available.

11.     CLC expends significant resources assisting reporters and other members of the public in their investigative research into candidates' financial support and relationships with donors, to ensure that the public is equipped with the information necessary to evaluate different candidates and messages and to cast informed votes.

12.     CLC also uses its analyses of federal campaign finance information to support its administrative practice at the FEC and before state and local campaign finance agencies, and to defend campaign finance laws in its active docket of cases in federal and state courts.

13.     Defendant FEC is an independent federal agency charged with the administration and civil enforcement of FECA. 52 U.S.C. § 30106(b).

## BACKGROUND

### *Governing Law*

**I.      Law Governing Political Committees**

14.     FECA defines a "political committee" as "any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year." 52 U.S.C. § 30101(4)(A); *see also* 11 C.F.R. § 100.5(a).[3]

15.     In *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), the Supreme Court construed FECA's definition of "political committee" to "only encompass organizations that are under the control of a candidate or the major purpose of which is the nomination or election of a candidate."

---

[3]      "Contribution" is defined to include "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(8)(A)(i). "Expenditure" is similarly defined to include "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election for Federal office." *Id.* § 30101(9)(A)(i).

*Id.* at 79. Again, in *FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238 (1986), the Court invoked the "major purpose" test in the context of analyzing the activities of a 501(c)(4) corporation, explaining that, if an organization's election-related spending activities "become so extensive that the *organization's major purpose may be regarded as campaign activity*, the corporation would be classified as a political committee." *Id.* at 262 (emphasis added). In such circumstances, the Court explained, the group would become "subject to the obligations and restrictions applicable to those groups whose primary objective is to influence political campaigns." *Id.* In *McConnell v. FEC*, 540 U.S. 93 (2003), the Supreme Court restated the "major purpose" standard for political committee status as it was articulated in *Buckley*. *Id.* at 170 n.64.

16.     The FEC has explained that:

> [D]etermining political committee status under FECA, as modified by the Supreme Court, requires an analysis of both an organization's specific conduct—whether it received $1,000 in contributions or made $1,000 in expenditures—as well as its overall conduct—whether its major purpose is Federal campaign activity (*i.e.*, the nomination or election of a Federal candidate).

Supplemental Explanation and Justification on Political Committee Status, 72 Fed. Reg. 5595, 5597 (Feb. 7, 2007).

17.     In addition to overall spending, an organization's public statements, advertisements, communications with donors, and fundraising appeals are all relevant to the fact-specific, case-by-case analysis of whether the organization's major purpose is the nomination or election of federal candidates. *See FEC v. Malenick*, 310 F. Supp. 2d 230, 234-36 (D.D.C. 2004); *FEC v. GOPAC, Inc*., 917 F. Supp. 851, 859 (D.C.C. 1996); Advisory Op. 2006-20 at 4-5 (Unity 08), https://saos.fec.gov/aodocs/2006-20.pdf. Likewise relevant are "statements by the organization that characterize its activities and purposes." Supplemental Explanation and

Justification on Political Committee Status, 72 Fed. Reg. at 5601; *see also id.* (relevant evidence of an organization's major purpose "may reach well beyond publicly available advertisements").

18.     Accordingly, there is a two-prong test for determining "political committee" status under federal election law: (1) whether an organization has received "contributions" or made "expenditures" in excess of $1,000 in a calendar year, and (2) whether the organization's "major purpose" is the "nomination or election of a candidate," as required by *Buckley*.

19.     An organization that satisfies the definition of "political committee" under the two-prong analysis must file a statement of organization with the FEC, 52 U.S.C. § 30103; comply with the organizational and recordkeeping requirements of 52 U.S.C. § 30102; and file periodic reports of its contributions and expenditures with the FEC, 52 U.S.C. § 30104.[4]

20.     The periodic reports that political committees are required to file with the FEC must publicly disclose information about the committee's contributions and expenditures, including the identify of any donor who has contributed $200 or more to the committee within the calendar year. 52 U.S.C. § 30104(b). Courts have repeatedly recognized the importance of campaign finance disclosure in informing the electorate about sources of political speech. *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 369 (2010) ("[T]he public has an interest in knowing who is speaking about a candidate shortly before an election."); *Stop This Insanity Inc. Emp. Leadership Fund v. FEC*, 761 F.3d 10, 16 (D.C. Cir. 2014) (emphasizing the "First Amendment rights of the public to know

---

[4]     In addition, a "political committee" that makes contributions to federal candidates, including in-kind contributions or coordinated communications, is subject to limits on the contributions it receives, 52 U.S.C. §§ 30116(a)(1), (a)(2), (f), and may not accept contributions from corporations. *Id.* § 30118(a). The FEC has concluded that a political committee that "intends to make only independent expenditures" and "will not make any monetary or in-kind contributions to any other political committee or organization" is not subject to FECA's contribution limits. FEC Advisory Op. 2010-11, at 2 (Commonsense Ten), https://www.fec.gov/files/legal/aos/2010-11/1144646.pdf.

the identity of those who seek to influence their vote"); *Citizens for Responsibility and Ethics in Washington*, 209 F. Supp. 3d at 81 ("[D]isclosure 'open[s] the basic process of our federal election[s] to public view,' . . . by 'provid[ing] the electorate with information' concerning the sources and outlets for campaign money") (internal citations omitted).

## II.    FECA'S Disclosure Requirements for Independent Expenditures by Non-Political Committees

21.     FECA's reporting requirements are not limited to political committees. FECA also requires that a person other than a political committee that makes independent expenditures "in an aggregate amount or value in excess of $250 during a calendar year" with respect to a particular election must report information about the spending to the Commission. 52 U.S.C. § 30104(c). "Independent expenditures" are expenditures that expressly advocate the election or defeat of a clearly identified federal candidate and are not coordinated with a candidate or political party. 52 U.S.C. § 30101(17); 11 C.F.R. § 100.16(a).

22.     A person other than a political committee that makes independent expenditures must file a report with the Commission disclosing, among other things, the identification of "each person who made a contribution to the reporting committee during the reporting period" in excess of $200, 52 U.S.C. § 30104(c)(1) (cross-referencing *id.* § 30104(b)(3)(A)), and "the identification of each person who made a contribution in excess of $200 to the person filing such statement which was made for the purpose of furthering an independent expenditure," 52 U.S.C. § 30104(c)(2)(C).

23.     FEC regulations previously interpreted these provisions to require disclosure of each person who made a contribution in excess of $200 "which contribution was made for the purpose of furthering the reported independent expenditure." 11 C.F.R. § 109.10(e)(1)(vi). But on August 3, 2018, the U.S. District Court for the District of Columbia held that the FEC's regulation

was invalid and contrary to the statute it purported to implement. *Citizens for Responsibility and Ethics in Washington v. FEC*, 316 F. Supp. 3d 349, 423 (D.D.C. 2018). The court found that the Commission's regulation "impermissibly narrow[ed] the mandated disclosure in 52 U.S.C. § 30104(c)(2)(C), which requires the identification of such donors contributing for the purpose of furthering the not-political committee's own express advocacy for or against the election of a federal candidate, even when the donor has not expressly directed that the fund be used in the precise manner reported." *Id.*

24.     Following the vacatur of the regulation, the FEC issued guidance stating that it will enforce 52 U.S.C. § 30104(c) by requiring persons other than political committees who report independent expenditures to disclose on quarterly reports the identity of (1) all "donors of over $200 annually making contributions 'earmarked for political purposes' . . . which contributions are 'intended to influence elections,'"[5] and (2) all "donors over $200 who contribute for the purpose of furthering *an* independent expenditure."[6]

### *Facts*

25.     Big Tent Project is a corporation holding tax-exempt status under section 501(c)(4) of the Internal Revenue Code. It registered as a corporation in Delaware on February 12, 2020—the day after Bernie Sanders won the New Hampshire Democratic primary.[7] Its Executive Director is Jonathan Kott.[8]

---

[5]     Press Release, *FEC Provides Guidance Following U.S. Supreme Court decision in CREW v. FEC, 316 F. Supp. 3d 349 (D.D.C. 2018)*, FEC (Oct. 4, 2018), https://www.fec.gov/updates/fec-provides-guidance-followingus-district-court-decision-crew-v-fec-316-f-supp-3d-349-ddc-2018/ (internal citations omitted).

[6]     *Id.* (emphasis in original).

[7]     Ex. 1 ¶ 5.

[8]     Ex. 1 ¶ 5 & n.3.

26.     Five days after forming, Big Tent Project created a Facebook page.[9] Then, between February 19 and March 10, 2020, it ran approximately 1,900 paid political ads on Facebook and Instagram attacking Sanders' presidential candidacy.[10]

27.     According to Facebook's political ad archive, every publicly available digital ad that Big Tent Project ran appears to have named Sanders and/or pictured Sanders, and was distributed to voters shortly before primary elections in their states.[11] Indeed, there is no evidence in the public record of Big Tent Project engaging in activities in 2020 *other* than those aimed at opposing Sanders' election.[12]

28.     To fund its digital ad campaign, Big Tent Project reportedly raised $1 million from contributors "within days" of its formation and, one week after forming, it "poured" those contributions into anti-Sanders independent expenditures in Nevada and South Carolina.[13]

---

[9]     Ex. 1 ¶ 6 & n.4 (citing Big Tent Project, FACEBOOK, https://www.facebook.com/Big-Tent-Project-112739086975178/).

[10]    Ex. 1 ¶ 6 & n.5 (citing Ads by Big Tent Project, Facebook Ad Library, FACEBOOK, https://www.facebook.com/ads/library/?active_status=all&ad_type=political_and_issue_ads&country=US&impression_search_field=has_impressions_lifetime&view_all_page_id=112739086975178&sort_data[direction]=desc&sort_data[mode]=relevancy_monthly_grouped).

[11]    Ex. 1 ¶ 38 & n.43 (explaining that a search of Facebook's archive of ads by Big Tent Project for "Sanders" in the keyword search field does not reduce the 1,900 estimate of number of ads run by the page).

[12]    Ex. 1 ¶ 38. Both at the time of Plaintiff's administrative complaint and at the time of filing this instant action, the only content on Big Tent Project's website—which domain records show was created on February 14, 2020, *see* WhoIs Search for "bigtentprojectfund.com," WHOIS.NET, https://www.whois.net/ (last visited May 6, 2021)—are two anti-Sanders ads. *See* BIG TENT PROJECT FUND, https://www.bigtentprojectfund.com/ (last visited May 6, 2021). The group's Facebook page did not, and still does not, include any organic content but, instead, appears only to have been used to purchase digital ads opposing Sanders. *See* Big Tent Project, FACEBOOK, *supra* note 10. And all public reporting about the organization and public statements by the organization focused on Big Tent Project's purpose of defeating Sanders' presidential campaign. *See infra* ¶ 36.

[13]    Ex. 1 ¶¶ 10, 39 & nn.10, 48-50 (citing Alayna Treene, *Exclusive: Anti-Sanders campaign targets black South Carolina voters*, AXIOS (Feb. 23, 2020), https://www.axios.com/bernie-sanders-south-carolina-group-658e85b9-2434-4e04-94ce-4a01a8637900.html; Alana Abramson,

Following the Nevada and South Carolina primary elections, the *Associated Press* reported that Big Tent Project was "looking to expand its ad campaign to other states and is expecting to take in more checks soon."[14] The group's executive director, Jonathan Kott, publicly stated that Big Tent Project's spending on independent expenditures "could expand as the group continues to raise funds" and that "any future ads will continue to target Sanders."[15]

29.     By February 25, 2020, Kott said he had "already raised close to \$2 million, and plan[ned] to spend it delving into Sanders['] record and views."[16] And after Joe Biden won South Carolina's primary on February 29, "Big Tent raised an additional \$4 million"—"[n]early all of that, Kott said, was going to digital ads targeting voters in Super Tuesday states."[17]

30.     Big Tent Project reported to the FEC that it spent \$3,467,610 on multi-state "Online/Digital" independent expenditures targeting voters in "Super Tuesday" states—i.e., states with primaries on March 3, 2020.[18] This, combined with its previous independent expenditures reported for anti-Sanders ads in Nevada and South Carolina, brought the group's total spending in

---

*Big-Money Democratic Donors Are Trying to Stop Bernie Sanders. But Even They Worry It Could Be Too Late*, TIME (Feb. 27, 2020), https://time.com/5791185/bernie-sanders-democratic-party-donors/; Big Tent Project Fund, 2020 April Quarterly, FEC Form 5 at 2 (filed Apr. 10, 2020), https://docquery.fec.gov/pdf/321/202004109216633321/202004109216633321.pdf).

[14]     Ex. 1 ¶ 48 (citing Abramson, *supra* note 13).

[15]     Ex. 1 ¶ 48 (citing NPR Staff, *Nevada Democratic Debate: Live Updates and Analysis*, NPR (Feb. 19, 2020), https://will.illinois.edu/news/story/nevada-democratic-debate-live-updates-and-analysis).

[16]     Ex. 1 ¶ 14 & n.20 (citing Michael Warren, Jeff Zeleny, Lauren Fox & Fredreka Schouten, *Bernie Sanders' rise has moderate Democrats wondering if it's too late to stop him*, CNN (Feb. 25, 2020), https://www.cnn.com/2020/02/25/politics/bernie-sanders-2020-rise/index.html).

[17]     Ex. 1 ¶ 19 & n.26 (citing Veronica Rocha, Amanda Wills, Mike Hayes & Meg Wagner, *Super Tuesday 2020*, CNN (Mar. 4, 2020), https://www.cnn.com/politics/live-news/super-tuesday-results-2020/h_7862117d2a088e09f58d95cc422e91f6).

[18]     Ex. 1 ¶ 18 (citing Big Tent Project Fund, 2020 April Quarterly, *supra* note 13, at 4-6).

the presidential race to $4,819,714.[19] Big Tent Project's FEC report did not disclose the names of donors who gave for political purposes or who contributed to fund the group's independent expenditures.[20]

31.    Big Tent Project has not reported any independent expenditures to the FEC since Super Tuesday,[21] which was characterized at the time as a "dominant night" for Sanders' opponent Joe Biden and a "disappoint[ing]" one for Sanders.[22]

32.    Facebook's political ad archive does show, however, that, in the five days before the March 10 primaries in Michigan, Big Tent Project targeted voters in that state with tens of thousands of dollars of Facebook ads expressly advocating against Sanders' election[23]—which Big Tent Project did not report to the FEC.[24] Big Tent Project has not run any Facebook ads from the Big Tent Project Facebook page since March 10, 2020.[25]

---

[19]    Ex. 1 ¶ 24 & n.35.

[20]    Ex. 1 ¶ 47 & n.56.

[21]    Ex. 1 ¶ 21 (citing Big Tent Project Fund, Independent Expenditures (24- and 48-hour reports), FEC.GOV, https://www.fec.gov/data/independent-expenditures/?data_type=processed& committee_id=C90019175&is_notice=true&most_recent=true).

[22]    Ex. 1 ¶ 21 & n.28 (citing N.Y. Times Staff, *Super Tuesday Aftermath: Sanders Acknowledges Setback After Biden's Big Night*, N.Y. TIMES (Mar. 8, 2020), https://www.nytimes.com/live/2020/primary-results-biden-sanders-03-04).

[23]    Ex. 1 ¶ 22 & n.29 (citing Ads by Big Tent Project in Michigan, Facebook Ad Library, FACEBOOK, https://www.facebook.com/ads/library/?active_status=all&ad_type=political_and_issue_ads&co untry=US&impression_search_field=has_impressions_lifetime&view_all_page_id=1127390869 75178&regions[0]=Michigan&sort_data[direction]=desc&sort_data[mode]=relevancy_monthly_ grouped).

[24]    Ex. 1 ¶ 22 & n.30 (citing Big Tent Project Fund, 2020 April Quarterly, *supra* note 13, at 2-6; Big Tent Project Fund, Independent Expenditures in Michigan, 2019-20, FEC.GOV, https://www.fec.gov/data/independent-expenditures/?data_type=processed&committee_id= C90019175&is_notice=true&most_recent=true&candidate_office_state=MI&min_date=01%2F0 1%2F2019&max_date=12%2F31%2F2020).

[25]    Ex. 1 ¶ 22 & n.31 (citing Ads by Big Tent Project, Facebook Ad Library, *supra* note 10).

33.     Between March 5 and March 17, Big Tent Project also spent approximately $72,000 on anti-Sanders Facebook ads run under a Facebook page named "United We Succeed" that targeted voters in primary states such as Michigan and Arizona.[26] These targeted digital advertisements—all of which appear to have named and/or pictured Sanders—are susceptible of no reasonable interpretation other than as electoral advocacy against Bernie Sanders. Like Big Tent Project's ads run under its own name, the ads run under the "United We Succeed" name critiqued Sanders on issues such as the cost of enacting his proposed presidential policies; the only difference was that the "United We Succeed" ads ended with an appeal for viewers to "call" Sanders.[27] Ads run under the "United We Succeed" page name stopped after March 17—the date of primary elections won by Biden that "effectively ended [Sanders'] chance of a comeback."[28]

34.     In total, within about a month of its formation, Big Tent Project spent over $4.8 million on anti-Sanders independent expenditures, which constituted the vast majority of the group's known overall spending in 2020.[29] Big Tent Project's paid public communications, along with its precipitous drop in activity after Sanders' path to the presidential nomination became a near-impossibility, overwhelmingly demonstrate its major purpose of defeating Sanders' presidential campaign.

---

[26]     Ex. 1 ¶ 23 & n.32 (citing Zach Monterallo, *What to watch for in tonight's primaries*, POLITICO (Mar. 10, 2020), https://www.politico.com/newsletters/morning-score/2020/03/10/what-to-watch-for-in-tonights-primaries-785969; Ads by United We Succeed, Facebook Ad Library, FACEBOOK, https://www.facebook.com/ads/library/?active_status=all&ad_type=all&country=US&impression_search_field=has_impressions_lifetime&view_all_page_id=100926438191751).

[27]     Ex. 1 ¶ 23 & n.33 (citing Ads by United We Succeed, Facebook Ad Library, *supra* note 26).

[28]     Ex. 1 ¶ 23 & n.34 (citing Reid J. Epstein, Lisa Lerer & Thomas Kaplan, *Joe Biden Wins Primaries in Florida, Illinois, and Arizona: Highlights*, N.Y. TIMES (Mar. 17, 2020), https://www.nytimes.com/2020/03/17/us/politics/march-17-democratic-primary.html).

[29]     Ex. 1 ¶ 38.

35.     Big Tent Project's electoral purpose is even more apparent when considered along with contemporaneous public statements by and about the organization. For example:

a)      On February 19, 2020, *POLITICO Playbook* reported on "the Dem ad campaign aimed at taking down Bernie," and described Big Tent Project as "a Dem 501(c)(4) group aimed at boosting moderates" that "has $1 million to spend in [the] South Carolina and Nevada [presidential primaries and caucuses] to bash Sen. Bernie Sanders."[30] The article quoted Big Tent Project's executive director, Jonathan Kott, as stating:

> "Despite over 50 years in public life, Bernie Sanders has never been fully vetted. The Big Tent Project will shed light on his record of politically toxic policy proposals starting in Nevada and South Carolina. *Voters need to understand* that his well-known plans to kick union employees off their health care plans and end all private insurance, raise middle-class taxes and double the size of the government, and his less well-known radical views, like his efforts to dump nuclear waste in Hispanic communities, will repel many *general-election voters*.
>
> Either this stuff is debated now, when Democrats have time to consider it fully, or it will come out in the fall, in a torrent of negative ads by the Trump team that would likely prove politically fatal. Democrats deserve the facts before they *choose a nominee*."[31]

b)      The same day, *NPR* reported that "[m]oderate Democrats are striking back as Vermont Sen. Bernie Sanders continues to rise in national polls. The Big Tent

---

[30]     Ex. 1 ¶ 7 & n. 6 (citing Anna Palmer & Jake Sherman, *The Dem Ad Campaign Aimed At Taking Down Bernie*, POLITICO (Feb. 19, 2020), https://www.politico.com/newsletters/playbook/2020/02/19/the-dem-ad-campaign-aimed-at-takingdown-bernie-488357).

[31]     Ex. 1 ¶ 7 & n. 7 (citing Palmer & Sherman, *supra* note 30 (emphasis added)).

Project, a recently formed 501(c)(4) organization, launched an advertising blitz on

Wednesday that is specifically targeting Sanders":

> Big Tent Executive Director Jonathan Kott, a former top adviser to Sen. Joe Manchin, D-W.Va., says the ad buys could expand as the group continues to raise funds. Kott declined to name the donors sponsoring the push, but he said any future ads will continue to target Sanders.
>
> "No presumed front-runner in the modern era has ever skated by so easily with virtually no scrutiny of his record or ideas," Kott said in a message. "Sanders himself said he would welcome a debate about his socialism and electability so this project intends to launch one."[32]

c)    On February 25, 2020, *CNN* reported that Kott told the outlet that he "started his

group when Democratic donors approached him following Sanders' win in the New

Hampshire primary,"[33] and *Time* similarly reported that, "[i]n the aftermath of the

New Hampshire primary, more than half a dozen donors turned to" Kott, after

which he formed the Big Tent Project "to act and make sure voters had all the

information about [Sanders'] radical views before they voted."[34]

d)    On February 29, 2020, *NBC* reported, based on an interview with Kott, that Big

Tent Project was a "new group of moderate Democrats trying to stop Bernie

Sanders from winning their party's presidential nomination" that "came together in

---

[32]     Ex. 1 ¶ 8 & n.8 (citing NPR Staff, *supra* note 15).

[33]     Ex. 1 ¶ 14 & n.20 (citing Warren, Zeleny, Fox & Schouten, *supra* note 16); *see also* id. ¶ 13 n. 17 (citing Brian Slodysko, *Can Bernie be stopped? Some Democratic donors are trying*, ASSOCIATED PRESS (Feb. 25, 2020), https://abcnews.go.com/Politics/wireStory/bernie-stopped-democratic-donors-69213107).

[34]     Ex. 1 ¶ 15 & n.22 (citing Abramson, *supra* note 13).

recent weeks as some Democratic donors and operatives grew concerned about

Sanders' strength in Iowa and New Hampshire."[35]

e)  On March 2, 2020, the *Washington Post* reported that Big Tent Project (which the

*Post* described as a "super PAC") would be spending $4 million in Super Tuesday

states, and that Kott claimed the group "is now the largest anti-Sanders group in

terms of cash spent."[36]

f)  On March 4, 2020, *CNN* reported that Kott "was triumphant . . . after [Sanders']

disappointing second-place finish in several Super Tuesday state's primaries," and

reiterated that "Kott started the PAC, the Big Tent Project, after last month's New

Hampshire primary, when he said a group of Democratic donors approached him

with concerns Sanders could be running away with the nomination without an

exploration of his record":

> Kott told CNN on Monday that since former Vice President
> Joe Biden won South Carolina's primary, Big Tent raised an
> additional $4 million. Nearly all of that, Kott said, was going
> to digital ads targeting voters in Super Tuesday states.[37]

g)  On March 6, 2020, *The Daily Beast* characterized Big Tent Project Fund as "an

outside group formed by moderate Democrats in the wake of Sanders' rise in the

Democratic field," and featured the following statement from Kott:

---

[35]   Ex. 1 ¶ 16 & n.23 (citing Alex Seitz-Ward, *Group preps $4 million Super Tuesday push to stop Sanders*, NBC (Feb. 29, 2020), https://www.nbcnews.com/politics/2020-election/live-blog/south-carolina-primary-live-updates-democrats-vote-2020-candidates-n1145296/ncrd1146166#liveBlogHeader).

[36]   Ex. 1 ¶ 17 & n.24 (citing Jacqueline Alemany, *Power Up: Your complete guide to everything Super Tuesday*, WASH. POST (Mar. 2, 2020), https://www.washingtonpost.com/news/powerpost/paloma/powerup/2020/03/02/powerup-your-completeguide-to-everything-super-tuesday/5e58202188e0fa101a73b860/).

[37]   Ex. 1 ¶ 19 & n.26 (citing Rocha, Wills, Mike & Wagner, *supra* note 17).

"Big Tent Project has spent nearly $7 million in South Carolina, Super Tuesday and now Michigan, Washington, and Idaho exposing Bernie's radical record and ideas . . . Once voters learn more about him, they overwhelmingly reject his candidacy, because they know the only thing he can actually deliver is another four years of Trump."[38]

36.     The foregoing allegations, detailed in CLC's administrative complaint, provide reason to believe that, in 2020, Big Tent Project met the two-prong test for a federal political committee by: (1) making "expenditures" of more than $1,000 in a calendar year, and (2) having the major purpose of influencing federal elections—namely, defeating Bernie Sanders' 2020 presidential campaign. By failing to organize and register as a political committee and file periodic reports with the Commission as required, Big Tent Project violated 52 U.S.C. §§ 30102-30104.

37.     The foregoing allegations, detailed in CLC's administrative complaint, also provide reason to believe that, regardless of whether Big Tent Project was a political committee, it violated FECA by failing to report the identities of those contributors who gave for political purposes and to fund its independent expenditures, in violation of 52 U.S.C. § 30104(c).[39] Specifically, the public statements of Big Tent Project's executive director and other public records provide reason to believe that contributors gave to Big Tent Project for political purposes and to further the organization's independent expenditures.[40]

38.     The foregoing allegations, detailed in CLC's administrative complaint, further provide reason to believe that Big Tent Project violated FECA by failing to report tens of thousands

---

[38]     Ex. 1 ¶ 20 & n.27 (citing Jackie Kucinich, *An Anti-Sanders Group That's Ticking Off Bernie Plans Another Round of Ads*, THE DAILY BEAST (Mar. 6, 2020), https://www.thedailybeast.com/an-anti-sanders-group-thats-ticking-off-bernie-plansanother-round-of-ads?ref=scroll).

[39]     *See supra* ¶ 31 & n.24; Ex. 1 ¶¶ 44, 47-49.

[40]     *See, e.g.*, *supra* ¶¶ 29-30, 36 and accompanying footnotes.

of dollars it spent on independent expenditures to influence the March 10 Michigan primary, in violation of 52 U.S.C. § 30104(c).[41]

## ADMINISTRATIVE PROCEEDINGS

39.     On May 7, 2020, CLC and Margaret Christ, an individual, filed an administrative complaint with the FEC alleging that Big Tent Project violated 52 U.S.C. §§ 30102-30104 by failing to register and report as a political committee under FECA and that, even if Big Tent Project were not a political committee, it violated FECA by failing to disclose the identities of contributors who gave for political purposes and to fund its independent expenditures, and by failing to report tens of thousands of dollars of independent expenditures, in violation of 52 U.S.C. § 30104(c).[42]

40.     On May 11, 2020, the FEC sent CLC and Christ a letter acknowledging receipt of the complaint and designating it MUR No. 7735.

41.     Upon information and belief, the FEC has failed to act on Plaintiff's May 7, 2020 administrative complaint against Big Tent Project, which has been pending now for more than 375 days.

## CAUSE OF ACTION

### *Failure to Act, 52 U.S.C. § 30109(a)(8)(A)*

42.     Plaintiff repeats and realleges paragraphs 1-41.

43.     The FEC's failure to act on Plaintiff's administrative complaint is contrary to law under 52 U.S.C. § 30109(a)(8)(A), which provides Plaintiff a cause of action for "a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed."

---

[41]     *See supra* ¶¶ 33-34 and accompanying footnotes; Ex. 1 ¶¶ 50-52.

[42]     Ex. 1 ¶¶ 26-52.

## REQUESTED RELIEF

WHEREFORE, Plaintiff requests that this Court:

(1)     Declare that the FEC's failure to act on Plaintiff's administrative complaint is contrary to law under 52 U.S.C. § 30109(a)(8)(A);

(2)     Order the FEC to conform with this declaration within 30 days, pursuant to 52 U.S.C. § 30109(a)(8)(C);

(3)     Award Plaintiff its costs incurred in this action; and

(4)     Grant such other relief as the Court may deem just and proper.


Dated: May 19, 2021                                  Respectfully submitted,

/s/ Erin Chlopak
Erin Chlopak (DC Bar No. 496370)
Adav Noti (DC Bar No. 490714)
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Ste. 400
Washington, DC 20005
(202) 736-2200
echlopak@campaignlegal.org
anoti@campaignlegal.org